James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  jshea@shea.law
　　　　blarsen@shea.law
　　　　kwyant@shea.law

-and-

**JEFFREY D. STERNKLAR LLC**
Jeffrey D. Sternklar, Esq. (*Admitted Pro Hac Vice*)
Massachusetts Bar No. 549561
101 Federal Street, Suite 1900
Boston, Massachusetts 02110
Telephone: (617) 207-7800
Email: jeffrey@sternklarlaw.com

-and-

**MURPHY & KING, P.C.**
Charles R. Bennett, Jr., Esq. (*Admitted Pro Hac Vice*)
Massachusetts Bar No. 362610
Harold B. Murphy, Esq. (*Pro Hac Vice Pending*)
28 State Street, Suite 3101
Boston, Massachusetts 02109
Telephone:  (617) 423-0400
Email:  cbennett@murphyking.com

*Attorneys for Plaintiff White Winston Select Asset Funds, LLC*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br>MUSCLEPHARM CORPORATION<br><br>Debtor. | Chapter 11<br><br>Case No.: 22-14422-nmc |

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

| | |
|---|---|
| WHITE WINSTON SELECT ASSET FUNDS, LLC<br><br>Plaintiff<br><br>v.<br><br>EMPERY TAX EFFICIENT LP, EMPERY TAX EFFICIENT III, EMPERY DEBT OPPORTUNITY FUND, LP, EMPERY MASTER ONSHORE, LLC, IONIC VENTURES, LLC, INTRACOASTAL CAPITAL LLC, BIGGER CAPITAL FUND, LP, DISTRICT 2 CAPITAL FUND LP, L1CAPITAL GLOBAL OPPORTUNITIES MAASTER FUND, ALTIUM GROWTH FUND, LP, CVI INVESTMENT INC., ROTH CAPITAL PARTNERS, LLC, and WALLEYE OPPORTUNITY MASTER FUND LTD.<br><br>Defendants. | Adv. P. No. |

## COMPLAINT

Plaintiff, WHITE WINSTON SELECT ASSET FUNDS, LLC ("White Winston"), by and through its counsel, Murphy & King, PC, hereby submits its Complaint and claims and alleges against Empery Tax Efficient LP ("Empery") on behalf of itself and as collateral agent for Empery Tax Efficient III, Empery Debt Opportunity Fund, LP, Empery Master Onshore, LLC, Ionic Ventures, LLC, Intracoastal Capital LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, L1Capital Global Opportunities Master Fund, Altium Growth Fund, CVI Investment Inc., and Anson Investment Master Fund, LP (the "October Securities Purchasers") and Empery on behalf of itself and as collateral agent for Empery Tax Efficient III, LP, Empery Debt Opportunity Fund, LP, Empery Master Onshore, LLC, Ionic Ventures, LLC, Intracoastal Capital LLC, Bigger Capital Fund, LP, District 2 Capital Fund LP, L1Capital Global Opportunities Master Fund, Altium Growth Fund, Roth Capital Partners LLC and Walleye Opportunity Master Fund Ltd. (the "June Securities Purchasers," and collectively with the October Securities Purchasers, the "Securities

Purchasers") as follows:

**PARTIES**

1. Plaintiff White Winston Select Asset Funds, LLC, is a limited liability company with a principal place of business at 265 Franklin Street, Boston, Massachusetts.

2. Empery Tax Efficient LP is a limited partnership with a principal place of business at 1 Rockerfeller Plaza, Suite 1205, New York, New York.

3. Empery Tax Efficient III, LP is a limited partnership with a principal place of business at 1 Rockerfeller Plaza, Suite 1205, New York, New York.

4. Empery Debt Opportunity Fund, LP is a limited partnership with a principal place of business at 1 Rockerfeller Plaza, Suite 1205, New York, New York.

5. Empery Master Onshore, LLC, is a limited liability company with a principal place of business at 1 Rockerfeller Plaza, Suite 1205, New York, New York.

6. Ionic Ventures, LLC, is a limited liability company with a principal place of business at 3053 Filmore Street, Suite 256, San Francisco, California.

7. Intracoastal Capital LLC, is a limited liability company with a principal place of business at 2211A Lakeside Drive, Bannockburn, Illinois.

8. Bigger Capital Fund, LP, is a limited partnership with a principal place of business at 11700 West Charleston Boulevard, Number 170-659, Las Vegas, Nevada.

9. District 2 Capital Fund, LP, is a limited partnership with a principal place of business at 175 West Carver Street, Huntington, New York.

10. L1 Capital Global Opportunities Master Fund, has a principal place of business at 1688 Meridian, Level 6, Miami Beach, Florida.

11. Altium Growth Fund, has a principal place of business at 152 West 57th Street, New York, New York.

12. CVI Investment, Inc., is a corporation with a principal place of business at 101 California Street, Suite 3250, San Francisco, California.

13. Anson Investment Master Fund, LP, is a limited partnership with a principal place of business at 155 University Avenue, Suite 207, Toronto, Ontario, Canada.

14. HB Fund LLC, is a limited liability company with a principal place of business at 28 Havemeyer Place, 2nd Floor, Greenwich, Connecticut.

15. ROTH Capital Partners, LLC, is a limited liability company with a principal place of business at 888 San Clemente Drive, Newport Beach, California

16. Walleye Opportunity Master Fund Ltd. has a principal place of business at 2800 Niagara Lane North, Plymouth, Minnesota.

## JURISDICTION AND VENUE

17. This Adversary Complaint and the claims herein are brought pursuant to Bankruptcy Rule 7001 seeking an order, judgment, and decree from this Court determining the validity, priority, and extent of any claim asserted by the Securities Purchasers.

18. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 105. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL ALLEGATIIONS

### I. MusclePharm's Financial Condition

19. The Debtor, MusclePharm Corporation ("MusclePharm"), is a Nevada corporation that develops, manufactures primarily through contract manufacturers, markets, and distributes branded sports nutrition products and energy beverages.

20. Since at least 2018, MusclePharm's audited financial statements show MusclePharm was insolvent and subject to a going concern qualification from its auditors. For the period 2018 through 2021 MusclePharm suffered operating losses in an aggregate amount exceeding $25 million.

21. In November 2020, in order to continue operating and because it was not able to borrow funds or raise capital from conventional sources, MusclePharm issued a convertible secured promissory note in the amount of $2,871,967 with a twelve percent (12%) interest rate to an insider, Ryan Drexler ("Drexler"), MusclePharm's Chief Executive Officer, Director, and controlling shareholder.

22. By 2021, MusclePharm was in a desperate financial condition as a result of its continuing operating losses, cash flow deficits, and outstanding and overdue obligations. Those outstanding and overdue obligations include, but are not limited to, the following:

   a. A key contract manufacturer, ThermoLife International, had obtained a judgment against MusclePharm in the amount of $1.6 million;

   b. MusclePharm was two years in default in the payment of $800,000 due to Manchester City Football Group pursuant to a settlement agreement;

   c. MusclePharm owed approximately $3.2 million on a settlement with one of MusclePharm's suppliers, 4Exclsior;

   d. MusclePharm also owed approximately $1,978,000 on a settlement agreement with NutraBlend.

23. MusclePharm had ongoing litigation including with White Winston, which had initiated a derivative action against MusclePharm and its directors related to the improper approval of refinancing of promissory notes issued to Drexler.

24. Because it was unable to borrow funds or raise capital from conventional sources, in June 2021, MusclePharm had to borrow $1,000,000 on a secured basis from Prestige Capital Corporation ("Prestige"), which also was factoring MusclePharm's accounts receivable. This $1,000,000 loan was based upon a six-month term, with fifteen percent (15%) interest and a two percent (2%) fee. For the same reasons, in July 2021, MusclePharm had to borrow an additional $1,000,000 from Prestige on substantially the same terms.

25. In August 2021, and because it was unable to borrow funds or raise capital from conventional sources, MusclePharm had to borrow an additional amount of approximately $2,457,000 from Drexler based upon another secured convertible promissory note with a twelve percent (12%) interest rate.

26. Also in August 2021, and because it was unable to borrow funds or raise capital from conventional sources, MusclePharm had to borrow $1,000,000 on a secured basis from Change Capital Holdings, LLC ("Change Capital"), which loan had to be repaid on a weekly basis within a year with an unknown rate of interest.

II. **The October Security Purchase**

27. At the end of July 2021, MusclePharm was introduced to Empery as a potential source of funding. Empery is a New-York based hedge fund that purchases equity and equity-linked securities directly from targeted companies via negotiated transactions to generate equity-like returns. Empery eventually agreed to provide funding to MusclePharm through two Security Purchase Agreements, as here and after defined, whereby Empery, its affiliates, and other hedge funds invested in MusclePharm.

28. Prior to investing in MusclePharm, the October Securities Purchasers were fully apprised of MusclePharm's insolvency, financial distress and overdue obligations because all of

these matters were fully disclosed in MusclePharm's SEC filings and/or the disclosure schedules provided by MusclePharm in connection with the Security Purchase Agreements.

29. In October, the October Securities Purchasers ultimately determined to invest funds in MusclePharm, which was then trading on the "pink sheets" for approximately $0.70 on the basis that MusclePharm's stock price would increase based upon a new product that MusclePharm intended to develop and that the increase in MusclePharm's stock price would result in its stock being listed on the National Association of Securities Dealers Automated Quotations Capital Market ("NASDAQ").

30. In order to obtain an equity-like return on its funding that it required and in view of MusclePharm's insolvency and the highly speculative nature of its investment, the October Securities Purchasers structured their investment in MusclePharm to take advantage of MusclePharm's dire need for funding through short term discounted notes that had exorbitant interest rates and penalty terms that would allow it to reap substantial profits regardless of whether MusclePharm's stock price increased.

31. On October 13, 2021, MusclePharm entered into a Securities Purchase Agreement ("October Security Purchase Agreement") with the October Securities Purchasers pursuant to which short term discounted notes that had exorbitant interest rates and penalty terms (the "October Discounted Notes") were sold and cash less warrants were issued (the "October Warrant," and collectively with the October Discounted Notes, the "October Securities") (the "October Security Purchase") to the October Securities Purchasers.

32. The aggregate amount due under the October Discounted Notes was $8,197,674, however the October Securities Purchasers only paid MusclePharm $7,050,000 for the October Discounted Notes.

33. The difference between the aggregate Principal Amount of the October Discounted Notes and the amount actually paid by the October Securities Purchasers reflects an original issue discount ("OID") of fourteen percent (**14%**). An OID of fourteen percent (**14%**) translates into interest of more than sixteen percent (**16%**).[1] Because the October Discounted Notes had a six (6) month term, the annual percentage rate of interest ("APR") on the October Discounted Notes due to the OID was more than thirty-two percent (**32%**).

34. The October Discounted Notes further provided that if the October Discounted Notes were not paid by the six-month maturity date, the October Securities Purchasers were entitled to a Mandatory Default Amount, which was twenty percent (**20%**) of the Principal Amount of the October Discounted Notes, which resulted in an increase of the Principal Amount by approximately $1,639,535.

35. In addition to the Mandatory Default Amount, after the maturity date, the October Discounted Notes required the payment of interest at a rate of eighteen percent (**18%**) per annum on the Principal Amount as increased by the Mandatory Default Amount (the "Default Interest").

36. The APR of the October Discounted Notes, due to the OID, the Mandatory Default Amount, and the Default Interest, was approximately fifty-two percent (**52%**).

37. In connection with the June Security Purchase (as defined below) the October Securities Purchasers required MusclePharm to enter into a Waiver and Amendment Agreement extending the maturity date and increasing the Principal Amount of the October Discounted Notes, without providing any additional funding, from $8,197,674 to $9,759,135, for an increase of $1,561,461 (the "June Increase").

---

[1] By way of example, if a note has an OID of 14%, the amount advanced would be $86 for a principal note amount of $100. The effective interest rate as a result of that OID is 16.3% ($14 of interest on an investment of $86) if the note had a one year maturity.

38. As a result of the foregoing, the APR of the October Discounted Notes, due to the OID, the Mandatory Default Amount, the June Increase, and the Default Interest, was approximately sixty-seven percent (**67%**). In addition the October Discounted Notes provided that the October Securities Purchasers could collect other unspecified 'liquidated damages', attorney's fees and expenses for failure to timely pay the October Discounted Notes.

39. The October Security Purchase Agreement imposed numerous restrictions which effectively prohibited MusclePharm from obtaining any additional debt funding from anyone other than the October Securities Purchasers. The October Security Purchase Agreement further restricted MusclePharm from paying outstanding and overdue obligations to its creditors.

40. As security for the October Discounted Notes, MusclePharm was required to execute a Pledge and Security Agreement (the "Security Agreement"), a Trademark Security Agreement and a Deposit Account Sweep/Swap Investment Control Agreement (collectively with the Security Agreement, the "Collateral Documents"), which granted Empery, as collateral agent, a first priority security interest in substantially all of the assets of MusclePharm except for the accounts factored to Prestige in which they have a second priority interest, along with a pledge of 100% of the stock held by MusclePharm in its subsidiaries.

41. Each October Securities Purchaser was issued an October Warrant to purchase shares of common stock in an amount equal to 150% of the Principal Amount of each security purchaser's October Discounted Note divided by 0.7085. The October Warrant could be exercised for the purchase price of $0.7794. At that time, the stock was trading at $0.71.

42. The October Security Purchase Agreement imposed numerous restrictions which effectively prohibited MusclePharm from obtaining any additional equity funding from anyone other than the October Securities Purchasers.

43. The October Security Purchase Agreement and ancillary documents executed in connection therewith all were intended to and in fact enabled the October Securities Purchasers to gain control over MusclePharm by limiting and restricting MusclePharm's ability to obtain additional funding through either debt or equity, to pay obligations to certain of its creditors, and otherwise handcuff MusclePharm.

44. The circumstances in which the October Securities Purchasers made their investment and the terms thereunder require a finding that the Security Purchaser's putative debt be considered equity and be treated as such.

### III.  The June Security Purchase

45. The actual amount available to MusclePharm from the October Security Purchase was only approximately $5,000,000 because there was approximately $1,000,000 of placement fees, legal fees and expenses, and the October Security Purchase Agreement required the short-term $1,000,000 loan from Change Capital be repaid as a condition of closing. The net proceeds from the October Security Purchase were quickly consumed by MusclePharm's operating losses, and cash flow deficits and accordingly, MusclePharm's financial condition continued to deteriorate.

46. As MusclePharm's financial condition deteriorated, so did its stock price, decreasing from approximately $0.70 at the time of the October Security Purchase to approximately $0.20 by June 2022.

47. In January, in order to fund their continuing losses and cash flow deficits, MusclePharm had to seek approval from the October Securities Purchasers to permit Drexler to finance all of MusclePharm's purchase orders with one of its customers, Costco. The October

Securities Purchasers' permission was required because it was one of the many conditions imposed on MusclePharm through the October Security Purchase.

48. In early 2022, an additional contract manufacturer alleged that MusclePharm had defaulted on payments due to it of approximately $4,600,000.

49. On March 2, 2022, JW Nutritional, LLC, one of the key partners of MusclePharm sent a demand letter alleging that MusclePharm had purchased product on credit knowing that it did not have the ability to pay for it.

50. Predictably, MusclePharm was unable to pay the October Discounted Notes at the maturity date. MusclePharm had no alternative but to seek additional funding from the October Securities Purchasers and to seek an extension of the maturity date of the October Discounted Note.

51. As a consequence thereof, on June 3, 2022, MusclePharm entered into an Amended and Restated Security Purchase Agreement (the "June Security Purchase Agreement"), with the June Securities Purchasers, a group that was substantially similar to the October Securities Purchasers but included MusclePharm's investment banker, who had received and/or was entitled to substantial fees from the two security purchases (the "June Security Purchase" and collectively with the October Security Purchase, the "Security Purchases").

52. Pursuant to the June Security Purchase Agreement, the June Securities Purchasers purchased additional short term discounted notes with exorbitant interest and penalty terms (the "June Discounted Notes" and collectively with the June Discounted Notes, the "Discounted Notes") in the aggregate Principal Amount of $3,081,875, of which MusclePharm only received $2,465,500, which was further reduced by $514,972.75 in placement fees, legal fees and expenses.

53. The OID on the June Discounted Notes increased to twenty percent (**20%**) as opposed to the fourteen percent (**14%**) on the October Discounted Notes. An OID of twenty percent (**20%**) translates into an interest rate of twenty-five percent (**25%**). Because the June Discounted Notes had a six (6) month term, the APR on the June Discount Note was fifty percent (**50%**).

54. The June Discounted Notes contained the same Mandatory Default Amount as the October Discounted Notes. The June Discounted Notes also contained the same Default Interest.

55. The APR for the June Discounted Notes, including the OID and Mandatory Default Amount, and the Default Interest was one hundred percent (**100%**).

56. The June Security Purchase Agreement contained all the restrictions and oppressive terms of the October Security Purchase Agreement, and new restrictions on MusclePharm's right to manage its business including requiring the Securities Purchasers' permission to replace any of MusclePharm's executive directors.

57. In connection with the June Security Purchase Agreement, MusclePharm issued to the June Securities Purchasers warrants (the "June Warrant," and collectively with the June Discounted Note, the "June Securities") with an exercise price of $0.231 and amended the warrants issued in connection the October Security Purchase Agreement to reduce the exercise price from $0.7794 to $0.231. At that time the stock was trading at $0.21.

58. The net amount of $1,900,000 that MusclePharm had available from the June Security Purchase was insufficient to address MusclePharm's myriad problems and MusclePharm's financial condition continued to deteriorate when a major contract manufacturer and two major vendors all stopped doing business with MusclePharm based on outstanding unpaid

invoices. One of those vendors has claimed that it is owed $3,800,000 for products shipped after December 2021.

59. Less than two months after the June Security Purchase, the Securities Purchasers began sending to MusclePharm a series of reservation of rights letters and default notices. Finally, on September 22, 2022, the Securities Purchasers sent an Event of Default Redemption letter and declared the Discounted Notes immediately due and payable.

60. The Securities Purchasers sent the reservation of rights letters and default notices to force MusclePharm to file Chapter 11, where the Securities Purchasers could acquire MusclePharm's assets through their grossly inflated and putative claims.

61. When MusclePharm resisted the Securities Purchasers' efforts, the Securities Purchasers issued an Access Termination Notice to Wells Fargo on October 3, 2022, requiring Wells Fargo to remit all funds in MusclePharm's account to Empery. Shortly thereafter, Empery demanded MusclePharm to assemble all of the Securities Purchasers' claimed collateral and notified MusclePharm of its intention to sell the collateral through a public auction under UCC Article 9.

62. In December 2022, the Securities Purchasers assert that they are owed approximately $18,155,014 even though the Securities Purchasers only advanced approximately $9,515,500 to MusclePharm pursuant to the Security Purchases.

**COUNT I:**
**For a Declaratory Judgment that the Securities Purchasers' Claims Should be Treated as Equity**

63. White Winston realleges and repeats the allegations contained in Paragraphs 1 through 62 of the Complaint and by reference incorporates them herein.

64. The Securities Purchaser's characterization of their investments in MusclePharm as debt is not determinative of the true character of their claims. The circumstances regarding the

Security Purchases and the terms and conditions thereof have the characteristics of equity investments and not debt and should be treated as such.

65. A dispute exists between White Winston and the Securities Purchasers that is ripe for adjudication as to whether the Securities Purchasers' claims are equity interests or debt claims.

66. White Winston is entitled to a declaration that the claims of the Securities Purchasers are equity and should be treated as such.

## COUNT II
### For Declaratory Judgment that the Securities Purchasers' Claims Should be Equitably Subordinated to Those of White Winston

67. White Winston realleges and repeats the allegations contained in Paragraphs 1 through 66 of the Complaint and by reference incorporates them herein.

68. The Securities Purchasers engaged in a course of inequitable conduct resulting in harm to White Winston and other creditors, while conferring an unfair advantage upon the Securities Purchasers.

69. The Securities Purchasers took advantage of MusclePharm's desperate financial situation to enter into predatory financial arrangement with MusclePharm. An arrangement that assured the Securities Purchasers would be able to reap exorbitant profits to the detriment of White Winston and MusclePharm's other creditors.

70. As a result of the foregoing, the Securities Purchasers have secured for themselves all of the value in MusclePharm to the detriment of White Winston and MusclePharm's other creditors.

71. A dispute exists between White Winston and the Securities Purchasers that is ripe for adjudication as to whether the Securities Purchasers engaged in a course of inequitable conduct resulting in substantial harm to the creditors of MusclePharm including White Winston, while the Securities Purchasers were able to obtain for themselves a substantial advantage and benefit.

72. White Winston is entitled to a declaration that the Securities Purchasers engaged in inequitable conduct and that their claim should be subordinated pursuant to § 510(c).

**COUNT III**
**For Declaratory Judgment that the Mandatory Default Amount and the June Increase are Penalties**

73. White Winston realleges and repeats the allegations contained in Paragraphs 1 through 72 of the Complaint and by reference incorporates them herein.

74. The Mandatory Default Amount calculated as twenty percent (20%) of the principal plus unspecified 'liquidated damages' required by both Discounted Notes was not reasonable in light of any losses which the Securities Purchasers could reasonably have anticipated and constitutes a penalty.

75. The June Increase as a condition to the June Security Purchase Agreement constituted a penalty, and the Principal Amount of the Securities Purchasers' claim attributable to the that increase in the Principal Amount of the October Discounted Notes should be disallowed.

76. A dispute exists between White Winston and the Securities Purchasers that is ripe for adjudication as to whether the Mandatory Default Amount and June Increase are penalties and as such should be disallowed.

77. White Winston is entitled to a declaration that the Mandatory Default Amount and the June Increase are penalties and as such should be disallowed.

**WHEREFORE**, White Winston respectfully prays that this Court:

1. Enter a declaration that the Securities Purchasers claims are equity interest and not debt;

2. Enter a declaration that the Securities Purchasers engaged in in inequitable conduct and that their claim should be equitably subordinated pursuant to § 510(c);

3. Enter a declaration that the Mandatory Default Amount and the June Increase are penalties and as such should be disallowed;

4. For recovery of White Winston's attorneys' fees and costs incurred in connection with this matter; and,

5. For such other and further relief as the Court deems just and proper.

**MURPHY & KING, P.C.**

/s/Charles R. Bennett, Jr.
Charles R. Bennett, Jr., Esq. (*Admitted Pro Hac Vice*)
Massachusetts Bar No. 362610
Harold B. Murphy, Esq. (*Pending Pro Hac Vice\**)
28 State Street, Suite 3101
Boston, Massachusetts
Telephone: (617) 423-0400
Email: cbennett@murphyking.com

*Attorneys for Plaintiff White Winston Select Asset Funds, LLC*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432